|                          |   |                            |
|--------------------------|---|----------------------------|
| DANNY BROWN,             | : |                            |
|                          | : |                            |
|    plaintiff,            | : |                            |
|                          | : |                            |
| v.                       | : | CASE NO. 3:19-cv-00156(RAR)|
|                          | : |                            |
| NANCY A. BERRYHILL,      | : |                            |
| ACTING COMMISSIONER      | : |                            |
| OF SOCIAL SECURITY,[1]   | : |                            |
|                          | : |                            |
|    defendant.            | : |                            |

## RULING ON PENDING MOTIONS

Danny Brown("plaintiff") appeals the final decision of the
Commissioner of Social Security ("the Commissioner") pursuant to
42 U.S.C. § 405(g).  The Commissioner denied plaintiff's
application for Social Security Disability Benefits in a
decision dated November 20, 2018.  Plaintiff timely appealed to
this court.  Currently pending are plaintiff's motion for an
order reversing and remanding his case for a hearing (Dkt. #16-
2) and defendant's motion to affirm the decision of the
Commissioner.  (Dkt. #17.)

For the reasons that follow, the plaintiff's motion to
reverse, or in the alternative, remand is DENIED and the
Commissioner's motion to affirm is GRANTED.

---

[1] Andrew Saul is the new Commissioner of Social Security and has
been made a party to this action automatically.

## STANDARD

"A district court reviewing a final . . . decision [of the
Commissioner of Social Security] pursuant to section 205(g) of
the Social Security Act, 42 U.S.C § 405(g), is performing an
appellate function." Zambrana v. Califano, 651 F.2d 842, 844
(2d Cir. 1981). "The findings of the Commissioner of Social
Security as to any fact, if supported by substantial evidence,
[are] conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, the
court may not make a *de novo* determination of whether a
plaintiff is disabled in reviewing a denial of disability
benefits. Id.; Wagner v. Sec'y of Health and Human Servs., 906
F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is
to ascertain whether the Commissioner applied the correct legal
principles in reaching her conclusion, and whether the decision
is supported by substantial evidence. Johnson v. Bowen, 817
F.2d 983, 985 (2d Cir. 1987).

Therefore, absent legal error, this court may not set aside
the decision of the Commissioner if it is supported by
substantial evidence. Berry v. Schweiker, 675 F.2d 464, 467 (2d
Cir. 1982). Further, if the Commissioner's decision is
supported by substantial evidence, that decision will be
sustained, even where there may also be substantial evidence to
support the plaintiff's contrary position. Schauer v.
Schweiker, 675 F.2d 55, 57 (2d Cir. 1982).

The Second Circuit has defined substantial evidence as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence must be "more than a scintilla or touch of proof here and there in the record." Williams, 859 F.2d at 258.

The Social Security Act("SSA") provides that benefits are payable to individuals who have a disability. 42 U.S.C. § 423(a)(1). "The term 'disability' means . . . [an] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . . ." 42 U.S.C. § 423(d)(1). In order to determine whether a claimant is disabled within the meaning of the SSA, the ALJ must follow a five-step evaluation process as promulgated by the Commissioner.[2]

---

[2] The five steps are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him or her disabled, without considering vocational factors such as age, education, and work experience; (4) if the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the

In order to be considered disabled, an individual's impairment must be "of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). "[W]ork which exists in the national economy means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." Id.[3]

## PROCEDURAL HISTORY

Plaintiff initially filed for disability insurance benefits under Title II on February 12, 2014. (R. 397.)[4] Plaintiff alleged a disability onset date of November 9, 2006. (R. 270.) At the time of application, plaintiff alleged that he suffered from a neck injury anterior cervical discectomy follow by fusion, arthritis, loss of strength in both arms but mostly the left arm, depression, headaches, limited sitting and standing,

---

Commissioner then determines whether there is other work which the claimant could perform. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps. 20 C.F.R. § 416.920(a)(4)(i)-(v).

[3] The determination of whether such work exists in the national economy is made without regard to: 1) "whether such work exists in the immediate area in which [the claimant] lives;" 2) "whether a specific job vacancy exists for [the claimant];" or 3) "whether [the claimant] would be hired if he applied for work." Id.

[4] The Court cites pages within the administrative record as "R. ___."

and limited sleep due to pain and arm numbness. (R. 270.) The initial application was denied on July 25, 2014, and again upon reconsideration on September 3, 2014. (R. 291–293, 300–302). Plaintiff then filed for an administrative hearing which was held by ALJ Deirdre R. Horton (hereinafter the "ALJ") on August 4, 2015. (R. 60-91.) The ALJ issued an unfavorable decision on January 29, 2016. (R. 38–59.) On February 8, 2016, plaintiff sought a review by the Appeals Council, which was denied on May 5, 2015. (R. 1-4.) Plaintiff then sought judicial review and his claim was remanded on November 3, 2017. (R. 1369.) On April 16, 2018, the Appeals Council remanded the matter to the New Haven Hearings Office and a new hearing was held before the ALJ on September 27, 2018. (R. 1324–1363, 1364–1367.) The ALJ issued an unfavorable decision on November 20, 2018. (R. 1294–1323.) Plaintiff then filed this action seeking judicial review. (Dkt. #16-2.)

## DISCUSSION

Plaintiff asserts that the ALJ's opinion at steps two and five is not supported by substantial evidence and the ALJ violated the treating physician rule. Based on the following, the Court finds that the ALJ's opinion was based on substantial evidence and did not violate the treating physician rule. The Court therefore affirms the ALJ's decision.

## I. The ALJ's Opinion Was Supported by Substantial Evidence in the Record

When an individual's impairment does not meet or equal a listed impairment, the ALJ will "make a finding [of the individual's] residual functional capacity based on all the relevant medical and other evidence in [the] case record." 20 C.F.R. § 404.1520(e). An individual's residual functional capacity ("RFC") is the most an individual can still do despite his or her limitations. 20 C.F.R. § 404.1545(a)(1). Plaintiff has the burden of establishing a diminished RFC. See Butts v. Barnhart, 388 F.3d 377, 383 (2d Cir. 2004).

"The regulations provide a two-step process for evaluating a claimant's assertions of pain and other limitations. At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2011) (citing 20 C.F.R. § 404.1529(b)). "If the claimant does suffer from such an impairment, at the second step, the ALJ must consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record." Genier, 606 F.3d at 49 (alterations in original) (quoting 20 C.F.R. § 404.1529(b)).

"In determining whether [an individual is] disabled, [the ALJ will] consider all [of an individual's] symptoms, including pain, and the extent to which [his or her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c). While statements of pain are insufficient, an ALJ may not reject statements of intensity and persistence of pain or other symptoms affecting an individual's ability to work because of a lack of substantiating medical evidence. Id. at § 404.1529(c)(2).

> a. The ALJ properly evaluated plaintiff's symptoms of
> depression.

Plaintiff asserts that the ALJ improperly evaluated his symptoms of depression. (Pl. Br. 10.) Plaintiff asserts that the ALJ erred by determining that plaintiff's symptoms of depression were nonsevere and then by failing to examine their effect on plaintiff's RFC. Plaintiff also asserts that the ALJ violated the treating physician rule by not affording controlling weight to LCSW Manukas' retrospective opinions. The Court disagrees.

A severe impairment is "any impairment or combination of impairments which significantly limits [a plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). A severe impairment must meet the durational

requirement, such that the impairment be "expected to result in
death, [or] it must have lasted or must be expected to last for
a continuous period of at least 12 months." 20 C.F.R. §
416.909.

The plaintiff argues that the ALJ improperly evaluated
plaintiff's symptoms of depression because the ALJ failed to
develop the administrative record enough to adequately address
plaintiff's symptoms of depression. However, the error was
harmless.

The ALJ determined that while plaintiff suffers from
depression, it does not significantly affect plaintiff's ability
to do basic work activities. (R. 1300.) The ALJ noted that
plaintiff did not begin complaining of depression until November
2009, three years after his alleged onset date. (R. 1301.)
Prior to that, Dr. Sabshin assessed plaintiff to have a normal
mental status. (R. 507, 556, 584.) The ALJ notes that although
plaintiff later sought treatment for depression, his treatment
encompassed large gaps and the medical records did not support
that plaintiff suffered more than mild limitations from his
depression. (R. 877, 1301.) However, state agency reviewers
concluded plaintiff's depression was severe. (R. 273, 284.)
Notably, the ALJ afforded these opinions great weight.

On April 23, 2014, LCSW Manukas reported that plaintiff had
no difficulty taking care of his personal hygiene, caring for

his personal needs, using good judgement regarding safety and dangerous circumstances, and using the appropriate coping skills to meet ordinary demands of the work environment. (R. 878.) LCSW Manukas continued to state that plaintiff also had no difficulties getting along with others without distracting them or exhibiting extreme behaviors, focusing long enough to complete simple tasks, performing basic work, and changing from one task to another. (R. 879.)

On September 25, 2014 and June 21, 2015, LCSW Manukas opined that plaintiff would likely have three or more absences a month due to his physiological impairments and suffered moderate loss of his ability to maintain attention for greater than two hours, maintain regular attendance and be punctual, deal with the stress of a semi-skilled job, and complete a normal work week. (R. 1205-09, 1211-12.)

The Court agrees with plaintiff's assertion that the ALJ improperly evaluated LCSW Manukas' opinions. The Court, however, rejects plaintiff's assertion that LCSW Manukas is a treating physician. "Licensed clinical social workers are not 'acceptable medical sources' due controlling weight under the treating physician rule." Drysdale v. Colvin, No. 14-CV-01722 SN, 2015 WL 3776382, at *4 (S.D.N.Y. June 16, 2015).

However, licensed clinical social workers "are still 'important' 'other sources' to whom the ALJ should look to show

the severity of a claimant's impairments or ability to work."
Id. (citing Diaz v. Shalala, 59 F.3d 307, 313 (2d Cir. 1995)).
The ALJ examined LCSW Manukas' opinion and afforded it little
weight. (R. 1302.) The ALJ stated that LCSW Manukas' treatment
notes were illegible, did not support plaintiff's asserted
limitations, presented large treatment gaps, and was drafted
after the relevant period. (R. 1302.)

Plaintiff argues that the ALJ was required to obtain more
legible copies of LCSW Manukas' treatment notes. Plaintiff
relies on Arguelles v. Astrue in support of his assertions.
However, unlike the physician in Arguelles, LCSW Manukas is not
a treating physician or an acceptable medical source. Her
opinion is regarded as important nonmedical evidence. Drysdale,
2015 WL 3776382, at *4.

"When an unsuccessful claimant files a civil action on the
ground of inadequate development of the record, the issue is
whether the missing evidence is significant." Santiago v.
Astrue, No. 3:10-cv-937(CFD), 2011 WL 4460206, at *2 (D. Conn.
Sept. 27, 2011) (citing Pratts v. Chater, 94 F.3d 34, 37-38 (2d
Cir. 1996)). While LCSW Manukas also provided three synthesized
opinions, the treatment notes are significant. (R. 887-80,
1210-14, 1205-9.) The ALJ stated that the notes did not support
LCSW Manukas' opinions. However, the notes were completely
illegible and the ALJ does not cite to anything specific that he

could read that he found to be inconsistent.  Thus, the Court
cannot determine if the ALJ based his decision on fact or his
own opinion.

Further, LCSW Manukas' treatment notes and opinion are the
only evidence in the record which establish plaintiff's
depression and subsequent limitations.  When reviewing
plaintiff's medical records, the state agency reviewers stated
that there was insufficient evidence to determine plaintiff's
mental limitations but stated that plaintiff's depression and
affective disorders were severe.  (R. 273, 284.)

Based on the above, plaintiff has established that a
reasonable mind could not accept the evidence supporting the
ALJ's conclusion as adequate.  Thus, the ALJ's determination
that plaintiff's depression is nonsevere is not supported by
substantial evidence.  Williams on Behalf of Williams v. Bowen,
859 F.2d 255, 258 (2d Cir. 1988).

However, when an ALJ errs in determining that an impairment
is nonsevere, the error is harmless if the ALJ finds other
severe impairments and continues with the analysis.  See
O'Connell v. Colvin, 558 Fed. Appx. 63, 65 (2d Cir. 2014);
Reices-Colon v. Astrue, 523 Fed. Appx. 796, 798 (2d Cir. 2013);
Stanton v. Astrue, 370 Fed. Appx. 231, 233 n.1 (2d Cir. 2010).

The ALJ determined that plaintiff suffered from the
following severe impairments, cervical disc disease s/p fusion

and discectomy with radiation to left arm. (R. 1300.) The ALJ
then continued his analysis and assessed plaintiff's RFC
"consider[ing] all [plaintiff's] symptoms . . . ." (R. 1303.)
Therefore, the ALJ's determination that plaintiff's depression
was nonsevere was harmless error.

> b. The ALJ properly evaluated plaintiff's symptoms of
> chronic pain and his combination of impairments.

The ALJ determined that plaintiff suffered from two
medically determinable impairments, cervical disc disease s/p
fusion and discectomy with radiation to his left arm, which
could have been expected to produce plaintiff's symptoms. (R.
1300, 1304.) The ALJ further determined that plaintiff's
cervical disc disease s/p fusion and discectomy with radiation
to his left arm more than minimally interfered with his ability
to perform basic work activities and thus were severe. (R.
1300.)

At step two, the ALJ determined that plaintiff's
declarations of pain were inconsistent with the objective
medical evidence and other evidence. Plaintiff asserts that the
ALJ violated 20 C.F.R. § 404.1529(c) by improperly basing his
decision on a lack of objective medical evidence supporting
plaintiff's claims. (Pl. Br. 15.)

The ALJ noted that while plaintiff complained of neck and
left arm pain, the objective medical evidence did not support

the level of plaintiff's assertions of pain.  (R. 1304-05.)  The
ALJ also noted that although plaintiff complained of pain in his
neck and left shoulder, plaintiff saw improvement following his
2009 surgery and medical examinations routinely demonstrated
that plaintiff had normal strength and range of motion.  (R.
556, 563, 565, 567, 598-99, 614, 616, 618, 712, 1306-07.)

    The ALJ noted that in November 2006, plaintiff was assessed
by Dr. Sabshin, who determined that plaintiff had a normal gait,
normal strength, normal range of motion in his neck, and fairly
good extension in his neck.  (R. 507.)  While plaintiff was
later referred to surgery by Dr. Sabshin in March 2007, Dr.
Elfenbein declined the surgery because plaintiff had a normal
neurological examination on November 30, 2006.  (R. 504, 544.)
Dr. Wijesekera also observed normal neurologic function on May
4, 2007.  (R. 498-500.)

    While the ALJ relied heavily on plaintiff's objective
medical evidence when assessing plaintiff's limitations of pain,
the ALJ also considered the credibility of plaintiff's
statements.  "As a fact-finder, the ALJ has the discretion to
evaluate the credibility of a claimant and to arrive at an
independent judgment, in light of medical findings and other
evidence."  Pietrunti v. Dir., Office of Workers' Comp.
Programs, 119 F.3d 1035, 1042 (2d Cir. 1997).

The ALJ examined plaintiff's assertions of his daily activities. The ALJ noted that plaintiff helps his wife cook, drives short distances, and plays drums for ten to twenty minutes a day. (R. 1304.) The ALJ also considered the testimony of plaintiff's mother in assessing plaintiff's assertions of pain. (R. 1312.)

The ALJ also examined the reports of Physical Therapist Paul Bauer and Dr. Engel who indicated that plaintiff's complaints of pain may not be credible. (R. 1306-07.) Mr. Bauer stated that he could not determine if plaintiff was capable of working because plaintiff refused some tests due to fear and Mr. Bauer opined that plaintiff had greater functional abilities than the abilities to which plaintiff limited himself. (R. 729.) Dr. Engel reported that while plaintiff complained of pain, he moved his neck more freely than would have been suggested. (R. 598.) Dr. Engel also opined that plaintiff's daily doses of pain medication are relatively low and indicate that his pain levels are not very high. (R. 869.)

The ALJ presented substantial evidence in support of his determination that plaintiff's pain was not as severe as plaintiff alleged and that plaintiff therefore was not precluded from participating in any substantial work activities. "'Under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the

evidence . . . Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record.'" Lillis v. Colvin, No. 3:16-cv-269(WIG), 2017 WL 784949, at *5 (D. Conn. Mar. 1, 2017) (quoting Hanson v. Comm'r of Soc. Sec., No. 315-CV-0150GTS(WBC), 2016 WL 3960486, at *12 (N.D.N.Y. June 29, 2016), report and recommendation *adopted sub nom.* Hanson v. Colvin, No. 315-CV-150GTS(WBC), 2016 WL 3951150 (N.D.N.Y. July 20, 2016)).

Plaintiff has failed to show that the previous accounts were insufficient for "a reasonable mind [to] accept as adequate to support a conclusion" that he was not precluded from participating in any substantially gainful activity. Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988)(quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Plaintiff has thus failed to show that the ALJ's decision was unsupported by substantial evidence in the record. Therefore, the ALJ's determination must be affirmed.

> *c. The ALJ's determination that plaintiff could frequently finger with his left arm and occasionally reach overhead and climb ramps, stairs, ladders, ropes or scaffolds is supported by substantial evidence.*

Plaintiff asserts that the ALJ's determination that plaintiff could frequently finger with his left arm and occasionally reach overhead and climb ramps, stairs, ladders, ropes, or scaffolds is not supported by substantial evidence.

(Pl. Br. 18.)  Plaintiff asserts that there is absolutely no
evidence in the record supporting the ALJ's determinations.
(Pl. Br. 18.)  The Court disagrees.

State agency physicians twice opined that plaintiff could
occasionally climb ramps, stairs, ladders, ropes, or scaffolds
and had a limited ability to reach overhead and unlimited
fingering ability.  (R. 275-6, 286.)  Although plaintiff
complained of pain in his neck and left shoulder, plaintiff saw
improvement following his 2009 surgery and medical examinations
routinely demonstrated that plaintiff had normal strength and
range of motion.  (R. 499, 556, 563, 565, 567, 598-9, 607, 614,
616, 618, 712, 1306-7.)

In 2017, Dr. Henry twice opined that plaintiff could not
return to work but did not indicate any work-related
limitations.  (R. 545, 546.)  The ALJ "is entitled to rely not
only on what the record says, but also on what it does not say."
Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983).  Dr.
Sabshin again made similar remarks without noting limitations,
but later recanted such determinations and stated that plaintiff
could perform some sedentary work that does not require lifting
more than 15 pounds.  (R. 571, 590, 621, 711, 714.)

The ALJ has presented substantial evidence that plaintiff
could frequently finger with his left arm and occasionally reach
overhead and climb ramps, stairs, ladders, ropes, or scaffolds.

"'Under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence . . . Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record.'" Lillis v. Colvin, No. 3:16-cv-269(WIG), 2017 WL 784949, at *5 (D. Conn. Mar. 1, 2017) (quoting Hanson v. Comm'r of Soc. Sec., No. 315-CV-0150GTS(WBC), 2016 WL 3960486, at *12 (N.D.N.Y. June 29, 2016), report and recommendation adopted sub nom. Hanson v. Colvin, No. 315-CV-150GTS(WBC), 2016 WL 3951150 (N.D.N.Y. July 20, 2016)).

Plaintiff has failed to show that the previous accounts were insufficient for "a reasonable mind [to] accept as adequate to support a conclusion" that plaintiff could frequently finger with his left arm and occasionally reach overhead and climb ramps, stairs, ladders, ropes, or scaffolds. Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988)(quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Plaintiff has thus failed to show that the ALJ's decision was not supported by substantial evidence in the record.

## II. The ALJ Did Not Violate the Treating Physician Rule

Plaintiff asserts that the ALJ violated the treating physician rule by affording Doctors Henry and Sabshin less than controlling weight while affording state agency physicians "great weight." (Pl. Br. 1.) The Court disagrees.

17

The medical opinions of treating physicians are generally given more weight than other evidence. The treating physician rule stipulates that "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' as long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)); see also Mariani v. Colvin, 567 F. App'x 8, 10 (2d Cir. 2014) ("A treating physician's opinion need not be given controlling weight where it is not well-supported or is not consistent with the opinions of other medical experts" where those other opinions amount to "substantial evidence to undermine the opinion of the treating physician").

"The regulations further provide that even if controlling weight is not given to the opinions of the treating physician, the ALJ may still assign some weight to those views, and must specifically explain the weight that is actually given to the opinion." Schrack v. Astrue, 608 F. Supp. 2d 297, 301 (D. Conn. 2009) (citing Schupp v. Barnhart, No. Civ. 3:02CV103(WWE), 2004 WL 1660579, at *9 (D. Conn. Mar. 12, 2004)). It is "within the province of the ALJ to credit portions of a treating physician's report while declining to accept other portions of the same

report, where the record contain[s] conflicting opinions on the

same medical condition." Pavia v. Colvin, No. 6:14-cv-06379

(MAT), 2015 WL 4644537, at *4 (W.D.N.Y. Aug. 4, 2015) (citing

Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002)).

In determining the amount of weight to give to a medical

opinion, the ALJ considers the examining relationship, the

treatment relationship, the length of treatment, the nature and

extent of treatment, evidence in support of the medical opinion,

consistency with the record, specialty in the medical field, and

any other relevant factors. 20 C.F.R. § 404.1527. It is

generally appropriate to "give more weight to the opinion of a

specialist about medical issues related to his or her area of

specialty than to the opinion of a source who is not a

specialist." 20 C.F.R. § 416.927(c)(5).

After considering these factors, "the ALJ must

'comprehensively set forth [his] reasons for the weight assigned

to a treating physician's opinion.'" Greek v. Colvin, 802 F.3d

370, 375 (2d Cir. 2015) (citing Burgess, 537 F.3d at 129)

(alteration in original). The ALJ may not simply substitute his

own judgment for that of the treating physician, and failure to

provide good reasons for the weight given to a treating

physician's opinion is grounds for remand. Id. However, it is

sufficient that the ALJ substantively reference the rule and

provide good reason for not assigning a plaintiff's treating

physician controlling weight.  *Crowell v. Comm'r of SSA*, 705

Fed. Appx. 34, 35 (2d Cir. 2017).

> *a. The ALJ did not violate the treating physician rule when*
> *examining Dr. Henry's opinions.*

Plaintiff asserts that there is no evidence in the record

that is inconsistent with Dr. Henry's opinion and therefore the

ALJ erred by failing to accord Dr. Henry's opinion controlling

weight.  The Court disagrees.

The ALJ did not violate the treating physician rule.  The

ALJ referenced the treating physician rule in substance.  The

ALJ noted the nature of the treating relationship, Dr. Henry's

consistency with the record, and evidence inconsistent with Dr.

Henry's opinion.  (R. 1311.)  The ALJ then provided good reason

for not affording Dr. Henry's opinion controlling weight.

Determinations as to whether a plaintiff is disabled "are

not medical opinions . . . but are, instead, opinions on issues

reserved to the Commissioner."  20 C.F.R. § 404.1527(d).  "A

statement by a medical source that [a plaintiff is] 'disabled'

or 'unable to work' does not mean that [the ALJ] will determine

that [the plaintiff is] disabled."  Id.  The ALJ "will not give

any special significance to the source of an opinion on issues

reserved to the Commissioner."  Id.

In *Wynter v. Colvin*, the plaintiff's treating physician,

Dr. Denzien, provided a one-page opinion stating that the

"[p]laintiff was capable of performing 'no work activity.'" No. 3:14-CV-00347 GTS, 2015 WL 5692330, at *8 (N.D.N.Y. Sept. 28, 2015). The ALJ assigned Dr. Denzien's opinion no weight because the determination that plaintiff could not perform any work was inconsistent with the record and was a determination reserved to the Commissioner. Id. The court noted that Dr. Denzien's treatment notes did not support the plaintiff's diagnosis and agreed that the opinion was otherwise inconsistent with the record. Id. The court therefore determined that the ALJ did not violate the treating physician rule by affording Dr. Denzien's opinion no weight. Id.

As in Wynter, Dr. Henry provided a two-page opinion which diagnosed plaintiff with neuropathy and stated that plaintiff could not return to work. (R. 545-6.) The ALJ afforded Dr. Henry's opinion no weight. (R. 1311.) The determination as to whether plaintiff could return to work was reserved to the ALJ. 20 C.F.R. § 404.1527(d). Dr. Henry's opinion was also far more deficient than Dr. Denzien's opinion in Wynter and contained no analysis or specific limitations. (R. 545-6, 1311.) Therefore, the ALJ did not err by failing to give special significance to Dr. Henry's conclusion that plaintiff could not work. Id.

The ALJ also noted that Dr. Henry's opinion is unsupported by the record. (R. 1311.) As detailed previously, substantial evidence supports the ALJ's determination that plaintiff is not

21

precluded from working.  The ALJ noted that although plaintiff complained of pain in his neck and left shoulder, plaintiff saw improvement following his 2009 surgery and medical examination routinely demonstrated that plaintiff had normal strength and range of motion.  (R. 556, 563, 565, 567, 598-9, 614, 616, 618, 712, 1306-7.)

Similarly, Dr. Henry's extreme limitations are unsupported by the record.  Dr. Henry opined on June 18, 2007 that plaintiff could not work and could never stand, walk, lift, or carry anything.  (R. 719.)  This opinion is inconsistent with plaintiff's own testimony and no other physician opined that plaintiff had such extreme limitations.  See (R. 270-9, 280-9, 728-9, 864-9, 992-6.)  Dr. Sabshin opined that plaintiff could sit for up to thirty minutes and stand for twenty minutes.  (R. 993-4.)  Mr. Paul Bauer stated that he could not determine if plaintiff could work because plaintiff refused some tests due to fear and opined that plaintiff had greater functional abilities than the abilities to which he limited himself.  (R. 729.)  Dr. Henry later opined that plaintiff could sit for thirty minutes, stand for twenty minutes, and rarely lift up to ten pounds.  (R. 988-9.)

Dr. Henry's opinions were therefore inconsistent with the record.  Thus, the ALJ did not err by assigning Dr. Henry's opinion less than controlling weight.

*b. The ALJ's examination of Dr. Sabshin's opinion did not
violate the treating physician rule.*

Plaintiff asserts that the evidence in the record supports
Dr. Sabshin's opinion and therefore the ALJ erred by failing to
accord his opinion controlling weight. The Court disagrees.

The ALJ did not violate the treating physician rule. The
ALJ referenced the treating physician rule in substance. The
ALJ noted the nature of the treating relationship, Dr. Sabshin's
consistency with the record, and evidence inconsistent with Dr.
Sabshin's opinion. (R. 1310-1.) The ALJ provided good reason
for not affording Dr. Sabshin's opinion controlling weight.

Dr. Sabshin offered three separate opinions. On November
22, 2006 and July 22, 2010 Dr. Sabshin opined that plaintiff was
totally disabled and unable to work. (R. 540, 622.) On October
27, 2010, however, Dr. Sabshin opined that plaintiff could
perform sedentary work and could not lift more than 10 to 15
pounds, bend, stoop, squat, or work at heights. (R. 621.) Dr.
Sabshin clarified that when he stated plaintiff was "totally
disabled" he only meant with respect to plaintiff's prior
employment. (R. 621.) On September 15, 2014, Dr. Sabshin
provided a questionnaire stating that plaintiff could sit for up
to thirty minutes and stand for twenty minutes. (R. 994-5.)

The ALJ afforded Dr. Sabshin's letters partial weight. (R.
1310.) The ALJ found Dr. Sabshin's opinions to be inconsistent

with the record. (R. 1310–1311.) As the ALJ noted, the opinions and the questionnaire are inconsistent. The ALJ agreed that plaintiff had no limitations with regards to his ability to sit, stand, or walk, but found the postural limitations to be extreme and unsupported by the record. (R. 1311.)

Dr. Sabshin opined that plaintiff could not bend, stoop, or squat. (R. 621.) While Dr. Sabshin noted that plaintiff had a decreased range of motion, Dr. Sabshin reported that plaintiff's range of motion had increased following plaintiff's 2009 surgery. (R. 611, 614, 616, 618.) While plaintiff asserts that his range of motion is limited due to pain, Dr. Engel opined that plaintiff's daily dose of pain medication is relatively low and indicates that his pain level is not very high. (R. 869.) Mr. Paul Bauer also stated that he could not determine if plaintiff could work because plaintiff refused some test due to fear and Mr. Bauer opined that plaintiff had greater functional abilities than the abilities to which he limited himself. (R. 729.)

Thus, the ALJ's determination that the record does not support Dr. Sabshin's postural limitations is supported by substantial evidence. The ALJ provided good reason for affording partial weight to Dr. Sabshin's opinion. Therefore, the ALJ did not violate the treating physician rule.

*c. The ALJ did not err by assigning great weight to the opinions of state agency physicians, Doctors Singh and Kahn.*

Plaintiff asserts that the ALJ erred by assigning great weight to the opinions of state agency physicians, Doctors Singh and Kahn. Plaintiff asserts that non-examining medical sources are to be afforded little weight *per se*. The Court disagrees.

Doctors Singh and Kahn opined that plaintiff could lift up to twenty pounds, ten pounds frequently, could occasionally stoop, kneel, crouch crawl, and climb ramps and stairs, and frequently sit, stand, walk, balance, and reach overhead. (R. 275-6, 285-6.) The ALJ determined that these opinions were supported by the objective medical evidence and consistent with the record. (R. 1309.) Accordingly, the ALJ afforded the opinions of Doctors Singh and Kahn great weight.

Plaintiff relies on <u>Hunt v. Astrue</u> in support of his argument that non-examining medical sources are entitled to little weight. (Pl. Br. 9.) Plaintiff's reliance is misplaced. In <u>Hunter</u>, the ALJ afforded the opinion of plaintiff's treating physician, Dr. Jarda, little weight. <u>Hunt v. Astrue</u>, No. 3:11CV01436 JCH, 2012 WL 2958215, at *15 (D. Conn. July 19, 2012). The court found that the ALJ's determination was not supported by substantial evidence and that the ALJ had failed to explicitly examine the treating physician rule and therefore violated the rule. <u>Id.</u>

Unlike <u>Hunter</u>, this Court has not found that the ALJ violated the treating physician rule. The decision in <u>Hunter</u> also predates <u>Crowell v. Comm'r of SSA</u>, in which the Second Circuit established that the treating physician rule does not require explicit consideration of every factor, it is sufficient that the ALJ substantively reference the rule and provide good reason for not assigning a plaintiff's treating physician controlling weight. <u>Crowell v. Comm'r of SSA</u>, 705 Fed. Appx. 34, 35 (2d Cir. 2017). Based on the more lenient standard, the Court determines here that the ALJ did not violate the treating physician rule and provided good reason for her decision to not afford controlling weight to plaintiff's treating physicians.

The present case is further distinguished from <u>Hunter</u> because, here, the ALJ provided good reason as to why she afforded great weight to the opinions of Doctors Singh and Kahn. Unlike <u>Hunter</u>, the ALJ afforded the opinions great weight because they were supported by objective medical evidence and consistent with the record. Thus, Plaintiff's reliance on <u>Hunter</u> is misplaced.

Further, while treating physicians are generally entitled to controlling weight, "[a] treating physician's opinion need not be given controlling weight where it is not well-supported or is not consistent with the opinions of other medical experts" where those other opinions amount to "substantial evidence to

undermine the opinion of the treating physician." Mariani v.

Colvin, 567 F. App'x 8, 10 (2d Cir. 2014).

Therefore, the Court rejects plaintiff's assertion that the

ALJ erred *per se* by affording controlling weight to Doctors

Singh and Kahn rather than plaintiff's treating physicians.

Finally, the ALJ did not err by affording the state agency

doctors controlling weight because the ALJ provided good reason

for both her decision to not afford controlling weight to

plaintiff's treating physicians and her decision to afford  the

opinions of Doctors Singh and Kahn great weight.

### III. The ALJ's RFC Determination is Affirmed and Thus the ALJ Did Not Err at Step Five

Plaintiff argues that the ALJ's RFC determination is not

supported by substantial evidence.  Specifically, plaintiff

asserts that the ALJ's hypothetical posed to the vocational

expert, which was identical to the ALJ's RFC determination, was

unsupported by substantial evidence.  The Court disagrees.

When an individual's impairment does not meet or equal a

listed impairment, the ALJ will "make a finding [of the

individual's] residual functional capacity based on all the

relevant medical and other evidence in [the] case record."  20

C.F.R. § 404.1520(e).  An individual's residual functional

capacity ("RFC") is the most an individual can still do despite

his or her limitations.  20 C.F.R. § 404.1545(a)(1).  Plaintiff

has the burden of establishing a diminished RFC.  See Butts v. Barnhart, 388 F.3d 377, 383 (2d Cir. 2004).

Plaintiff has failed to establish that the ALJ erred in her determination that plaintiff's RFC was not diminished by his claims of persistent pain.  The Court has already found that the ALJ's determination on this matter is supported by substantial evidence in the record.  Without proof of legal error or a lack of substantial evidence, the Court shall affirm the ALJ's RFC determination.  Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).

Because the ALJ's RFC determination is supported by substantial evidence, the ALJ's hypothetical incorporating the RFC to the vocational expert is also affirmed.  Dumas v. Schweiker, 712 F.2d 1545, 1554, n.4 (2d Cir. 1983) (the ALJ's step five determination is appropriate where the vocational expert's testimony is based on an RFC determination supported by substantial evidence).  The ALJ was therefore not required to accept the vocational expert's testimony regarding a hypothetical with further limitations.  See McIntyre v. Colvin, 758 F.3d 146, 151 (2d Cir. 2014).

## CONCLUSION

Based on the foregoing reasons, plaintiff's motion for an order to remand the Commissioner's decision (Dkt. #16-2) is

DENIED and the Commissioner's motion to affirm that decision (Dkt. #17) is GRANTED.

This is not a recommended ruling. The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. See 28 U.S.C. § 636(c)(3).

SO ORDERED this 24th day of January 2020, at Hartford, Connecticut.

                                    _____/s/___ ____ _____
                                    Robert A. Richardson
                                    United States Magistrate Judge